### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | |
| JESSE GOLDEN, | NO. 19-545 |
| *Defendant.* | |

**PAPPERT, J.**                                                                                   **June 2, 2020**

### MEMORANDUM

Jesse Golden was charged by indictment on September 17, 2019 with two counts of possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). Trial is scheduled for November 2, 2020. Golden filed a pretrial motion seeking, among other things, to suppress evidence of the firearm and ammunition seized from his residence.[1] He contends that the magistrate lacked a substantial basis to conclude probable cause existed and that the good faith exception is inapplicable. The Government filed a Response, and the Court heard oral argument on May 27, 2020. For the reasons that follow, the Court denies the Motion.

---

[1]     Golden's Motion also requests that the Court order the Government to produce evidence of prior conduct and other 404(b) evidence, as well as impeachment and *Brady/Giglio* material. *See* (Mot. to Suppress, ECF No. 29-1). Golden also seeks an order from the Court requiring government agents to preserve their rough notes of the investigation and disclose them to the Court for further review. *See* (*id.*) At oral argument, Golden's counsel confirmed that the parties had resolved these issues. *See* (May 27, 2020 Hr'g Tr. 3:21–4:25). The Court accordingly denies these requests without prejudice as moot.

I

On May 12, 2019, Philadelphia Police Officer LaManna[2] viewed and recorded a video posted to the "story" of an Instagram account with the username "slickdarula_d4dub."  *See* (Mot. to Suppress, App., at 5, ECF No. 29-1).  The video depicted two men inside of a vehicle, one of whom was "brandishing a large, black revolver."  *See* (*id.*)  Officer LaManna recognized the man without the gun to be Robert Hall, the owner of the Instagram account, but Officer LaManna did not know the man with the gun.  *See* (*id.*)  Ten days later on May 22, Philadelphia Police Officer Carr reviewed the video and knew, from numerous prior encounters, that the man with the gun was Jesse Golden.  *See* (*id.*)

Philadelphia Police Detectives Jordan and Palma reviewed the Instagram video and noted that "the bore of [the] firearm [was] clearly visible" and it revealed a barrel that "appear[ed] capable of discharging projectiles significantly larger than BBs or pellets."  *See* (*id.*)  The Detectives subsequently conducted queries of Golden and determined that his three prior convictions made him statutorily ineligible to possess a firearm.  *See* (*id.*)  The Detectives also discovered that Golden had been arrested in February of 2019, at which time he provided the police with 4923 Hoopes Street, Philadelphia, Pennsylvania 19139 as his home address.  *See* (*id.*)  A BMV inquiry confirmed that address.  *See* (*id.*)

On May 22, Detective Jordan applied for a warrant to search the 4923 Hoopes Street residence.  *See* (*id.* at 4).  The affidavit of probable cause included the facts mentioned above, along with a statement that, "[b]ased on the above circumstances

---

[2]     Neither the affidavit of probable cause nor the search warrant application provides the first names of many of the involved officers.

[Detective Jordan] believes there is sufficient probable cause to search 4923 Hoopes St. Philadelphia PA 19139 for firearms and ammunition, indicia of residency, [and] safes and lock[] boxes capable of securing the afore listed items therein." *See* (*id.* at 5).

A Pennsylvania judge approved the application and issued the warrant that same day. *See* (*id.* at 4). The search took place on May 23, and police officers seized a Taurus Model 970 tracker double action .22 caliber long rifle revolver and one hundred live rounds of Remington ammunition. *See* (*id.* at 4; Indictment, ECF No. 1).

## II

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "Probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (internal quotation marks and alterations omitted). A magistrate "must make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quotation and internal quotation marks omitted). In doing so, a magistrate may issue a warrant "so long as the totality of the circumstances gives rise to probable cause." *Id.* at 555. But all inferences and facts regarding probable cause must be drawn from the four corners of the affidavit. *See Virgin Islands v. John*, 654 F.3d 412, 420 (3d Cir. 2011).

A district court conducts "a deferential review of the initial probable cause determination made by the magistrate." *Stearn*, 597 F.3d at 554. The reviewing court does not decide probable cause *de novo*; it asks if "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* (quotation omitted). Without

3

acting as a "rubber stamp," a district court must resolve "doubtful or marginal cases" in favor of the magistrate's conclusion. *Id.* (quotation omitted).

III

Golden contends that the affidavit failed to establish a factual nexus indicating that a firearm or ammunition would be found at his home, such that the issuing magistrate lacked a substantial basis to find that probable cause existed. *See* (Mot. to Suppress 2–7).

A

1

Although the affidavit provided no direct evidence that a firearm or ammunition would be found in Golden's residence, it nonetheless provided the magistrate with enough facts to infer a nexus between the contraband sought and Golden's residence. First, the facts indicated that Golden possessed a firearm and that it was unlawful for him to do so. The affidavit stated that on May 12, 2019, Officer LaManna viewed and recorded a video posted to an Instagram "story" depicting two men, one of whom was brandishing what looked to be a firearm. *See* (Mot. to Suppress, App., at 5). Ten days later, Officer Carr viewed the video and immediately recognized the man brandishing the gun to be Golden. *See* (*id.*) When two Detectives watched the video, they noted that the bore of the gun was "clearly visible revealing a barrel that appears capable of discharging projectiles significantly larger than BBs or pellets." (*Id.*) An inquiry into Golden's criminal history revealed three previous convictions, which statutorily prohibited him from possessing firearms. *See* (*id.*) All of these facts combined indicated to the magistrate that Golden unlawfully possessed a firearm.

4

Second, the affidavit included substantial evidence that the Hoopes Street address was in fact Golden's residence. The affidavit noted that Golden provided the police with the Hoopes Street address as his home address when he was arrested in February of 2019, which a subsequent BMV query confirmed. *See* (*id.*)

Although these facts do not directly link the contraband to Golden's residence, "[d]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quoting *United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993)). Instead, "by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime," the facts contained in the affidavit provided the magistrate a substantial basis to infer probable cause. *Id.* (internal quotation marks omitted) (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).

Here, the crime being investigated was Pennsylvania's analog of the federal felon-in-possession statute. *See* (Mot. to Suppress, App. at 4). Crimes of possession are not merely one-time events or occurrences; rather, possession "is almost universally recognized to be a continuing offense." *United States v. Hull*, 456 F.3d 133, 146 (3d Cir. 2006) (Ackerman, J., concurring in part and dissenting in part). The continuity of the offense is interrupted only when there is "relinquishment of both actual *and* constructive possession of the gun." *United States v. Benjamin*, 711 F.3d 371, 378 (3d Cir. 2013) (internal quotation marks and citation omitted). The continuous possession of an enduring object like a firearm supports the finding that evidence of the gun would be found in Golden's residence.

The nature of the items sought also supports the probable cause determination to search Golden's residence. Firearms are durable, nonperishable goods. *See, e.g.*, *United States v. Pritchett*, 40 F. App'x 901, 906 (6th Cir. 2002) (unpublished) ("Firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time."). Even more importantly, firearms "are also the type[] of evidence likely to be kept in a suspect's residence." *Jones*, 994 F.2d at 1056. And because a convicted felon cannot lawfully acquire a firearm through legitimate commercial transactions, it is something that such an individual would have an incentive to keep.

The suspect's opportunity for concealment and normal inferences about where a suspect might hide the fruits of his crime further weigh in favor of the magistrate having a substantial basis to find probable cause. Again, the Third Circuit has stated it is a normal inference that firearms are the type of evidence "likely to be kept in a suspect's residence." *Id.*; *see United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (listing cases stating that it is reasonable to assume that people store firearms in their homes).

2

Golden contends the affidavit was insufficient because it did not include (1) a statement by Detective Jordan that based on his training, experience and years as a law enforcement officer, individuals who illegally possess firearms commonly store them in their residences, or (2) facts about when or where the video was recorded. *See* (Mot. to Suppress 6; May 27, 2020 Hr'g Tr. 6:4–8). While the inclusion of these facts would have been preferable, their omission is not fatal to the magistrate's probable cause finding.

Indeed, at oral argument, counsel's main point was that given the facts in this case, the magistrate was prevented from inferring that someone who unlawfully possesses a gun stores it in his residence. *See, e.g.*, (May 27, 2020 Hr'g Tr. 14:9–21; 18:1–18). Again, however, *Jones* instructs that firearms are among the types of evidence "likely to be kept" in a suspect's home. *See* 994 F.2d at 1056. Moreover, the Court is unaware of any Third Circuit authority requiring affiants to reference their training and experience in order to establish a nexus between evidence of a firearm and the suspect's residence. The magistrate, rather, is "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of the offense"—which is what occurred here. *Hodge*, 246 F.3d at 305–06.

Rather than stating the video's recording date or location, the affidavit noted the date the Instagram post was viewable on the account's "story"—May 12, 2019. (Mot. to Suppress, App., at 5.) The date a video is viewable on an Instagram story is, at minimum, a reference point. The magistrate could reasonably infer that the video was recorded contemporaneously to the date it was made viewable on the Instagram story, so long as no facts in the affidavit indicated otherwise. And as for the location of Golden's suspected unlawful possession of a firearm, two Philadelphia Police Officers recognized both individuals in the video, with Golden identified based on his prior encounters with the police in Philadelphia. *See* (Mot. to Suppress, App., at 5). A magistrate could infer from this information a nexus to Philadelphia.

B

In arguing that the affidavit of probable cause lacked a sufficient nexus between the contraband and the place to be searched, Golden relies primarily on two Third

Circuit decisions: *United States v. Hodge*, 246 F.3d 301 (3d Cir. 2001), and *Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011).  Neither of these cases, however, support granting Golden's Motion.

1

In *Hodge*, law enforcement officers searched the residence of a suspected drug dealer, and the defendant argued that the affidavit lacked probable cause because it failed to establish a sufficient nexus between his criminal activity and residence.  246 F.3d at 304.  For cases involving warrants to search a suspected drug dealer's residence, the Third Circuit has acknowledged that, although it is reasonable to infer that drug dealers commonly store evidence of the crime in their homes, application of that inference must be based on evidence supporting the following three premises: "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities."  *United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002); *see Stearn*, 597 F.3d at 559.  This third factor, in essence, is an "inference plus" requirement.

In *Hodge*, police obtained a search warrant for the defendant's residence after recovering two bags of crack cocaine during an arrest.  *Id.* at 303–04.  The affidavit in support of the warrant application included facts indicating that Hodge "was an experienced and repeat drug dealer who would need to store evidence of his illicit activities somewhere" and that the residence to be searched was Hodge's home.  *See id.* at 304–06.  The court also found that in addition to the reasonable inference "that a person involved in drug dealing on such a scale would store evidence of that dealing at

8

his home," the affidavit included the necessary "plus factors" to support that inference: Hodge's home was in the same city where he attempted the drug delivery; probable caused existed to arrest him on drug charges; and the affiant, who was an experienced police officer, opined that "Hodge's home would likely contain evidence related to Hodge's drug activities." *See id.* at 306–07. Cumulatively, these assertions provided a substantial basis to infer that a search of Hodge's residence would yield evidence of drug-related activities. *See id.*

Golden essentially asks the Court to extend *Hodge*'s "inference plus" requirement to felon-in-possession cases. Such a requirement applies more obviously to situations involving suspected drug distribution offenses because the suspected dealer is no longer in possession of the narcotics after the sale, thereby necessitating a stronger link to the residence. But that is not generally the case for situations involving the unlawful possession of firearms; rather, a firearm is the type of evidence to remain at the suspect's residence or in his possession absent facts indicating otherwise. *Jones*, 994 F.2d at 1056. And to date, the Third Circuit has neither adopted nor rejected this "inference plus" approach to firearms-related searches. *Id.* (declining to decide "whether in every case the fact that a suspect committed a crime involving . . . a gun automatically provides a magistrate with enough information to approve a search of a suspect's home"). Well after *Jones*, albeit in a nonprecedential opinion, a Third Circuit panel concluded that a magistrate had substantial basis to find probable cause without the "plus" factors: the affidavit identified the defendant as the perpetrator of a gun-related assault and included information indicating he lived at the apartment to be searched. *See United States v. Hopkins,* 220 F. App'x 155, 158 (3d Cir.

2007) (unpublished).  The court, in denying the motion to suppress, stated that "the evidence sought, a weapon used in an assault, is of the type typically stored in a perpetrator's residence."  *Id.* (citing *Jones*, 994 F.2d at 1056).

Other courts of appeals have also permitted magistrates to infer that firearms are commonly kept within a suspect's residence when determining whether there is probable cause to issue a search warrant.  *See, e.g.*, *Peffer v Stephens*, 880 F.3d 256, 271 & n.11 (6th Cir. 2018) (listing cases from other circuits and explaining "a suspect's use of a gun in the commission of a crime is sufficient to find a nexus between the gun that was used and the suspect's residence"); *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) ("It was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence. . . . even though the affidavit contained no facts that the weapons were located in defendant's trailer."); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975) ("[P]eople who own pistols generally keep them at home or on their persons.").

2

In *Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011), law enforcement officers had probable cause to believe that the defendant sexually assaulted a minor.  *See John*, 654 F.3d at 413.  The officers sought a warrant to search the defendant's residence for evidence relating to the sexual assault as well as the unrelated offense of child pornography.  *See id.*  With respect to the search for child pornography, the Third Circuit found that the officers could not rely on the good faith exception to the exclusionary rule; the affidavit included no facts indicating that John possessed child pornography nor did the affiant provide any facts indicating a correlation between the

two offenses.  *Id*. at 418–19.  The facts included in the affidavit of probable cause for the warrant to search Golden's residence, however, pertained only to the unlawful possession of a firearm and ammunition—for which the affiant provided sufficient facts indicating that Golden possessed the gun.

C

The affidavit's averments provided the magistrate with a substantial basis to infer that a search of Golden's residence would yield evidence of his unlawful possession of a firearm.  While it would have been preferable for the affiant to affirmatively state the date on which the video was recorded and mention that based on his experience and knowledge, those who illegally possess firearms store them in their homes, the affiant brought "the evidence he had to a magistrate judge, who determined that there was probable cause to issue the warrant[]."  *Jones*, 994 F.2d at 1057; *see Hodge*, 246 F.3d at 307.  A "grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," and "[t]his preference for warrants further persuades [the Court] to hold that the magistrate judge had a substantial basis for finding probable cause."  *Hodge*, 246 F.3d at 307 (internal quotation marks omitted) (quoting *Jones,* 994 F.2d at 1057).

IV

Even if the magistrate lacked a substantial basis for finding probable cause, the firearm and ammunition seized during the search would nonetheless be admissible under the good faith exception to the exclusionary rule.  *See United States v. Leon*, 468 U.S. 897 (1984).

11

A

If the magistrate issued a warrant without probable cause, a reviewing court need not suppress evidence derived from that warrant if the police acted in good faith reliance on the warrant's validity. *See United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002). "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999) (quoting *Leon*, 468 U.S. at 922 n.23). "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307–08.

There are, however, four situations in which this good faith exception does not apply. *Id.* at 308. First, if "the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit." *Zimmerman*, 277 F.3d at 436. Second, if "the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function." *Id.* Third, if "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 437. And fourth, if "the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." *Id.* In reviewing for good faith, a court must "consider not only any defects in the warrant but also the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known." *United States v. Franz*, 772 F.3d 134, 147 (3d Cir. 2014).

12

B

Golden contends that the good faith exception does not apply because the affidavit was so lacking in indicia of probable cause, thereby rendering official belief in its existence unreasonable.  *See* (Mot. to Suppress 7).  He again asserts that the affiant failed to "meet the minimum constitutional requirement" of providing facts establishing a nexus between the contraband sought and Golden's residence.  *See* (*id.* at 7–8).  As the probable cause analysis has already shown, however, the affidavit was not a "bare bones" document "based on conclusory statements and lacking factual support."  *Loy*, 191 F.3d at 368.  Instead, the affidavit identified Golden as the individual who unlawfully possessed a firearm, and it included information indicating that Golden lived at the residence to be searched.  Further, the evidence sought—*i.e.*, firearms and ammunition—is the type of evidence typically kept in one's residence.  *See Jones*, 994 F.2d at 1056.  Although the affidavit lacked some information, making the probable cause finding a somewhat closer call, the affidavit contained sufficient indicia to support the magistrate's finding of probable cause; "[o]nce the magistrate judge made that call, it was objectively reasonable for the officers to rely on it."  *See Hodge*, 246 F.3d at 309.

The officers' reliance on the warrant is further supported by somewhat unsettled caselaw in the Third Circuit.  Specifically, the court in *Jones* did not have to decide whether the fact that a suspect committed a crime involving a firearm in and of itself gives the magistrate enough information to approve a search of the suspect's residence.  *See* 994 F.2d at 1056; *Hodge*, 246 F.3d at 309 (citing *Jones* to indicate that the question remains undecided).  Thus, the officers executing the search warrant could not be

expected to know whether the magistrate made an erroneous finding of probable cause due to the lack of "plus factors" linking the firearm to Golden's residence.  *See Hodge*, 246 F.3d at 309.

An appropriate Order follows.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

14