IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION<br>NO. 19-00545 |
| JESSE GOLDEN | |

**PAPPERT, J.**                                                                                    **January 6, 2021**

**MEMORANDUM**

Jesse Golden seeks in two Motions revocation of his pretrial Order of Detention and immediate release on bond. The Court denies the Motions for the reasons that follow.

**I**

On September 17, 2019, Golden was charged with possession of a firearm and 100 live rounds of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Indictment 1–2, ECF No. 1.) The grand jury found he knew at the time he possessed the firearm that he was previously convicted of a crime punishable by imprisonment exceeding one year. (*Id.*)

Golden was ordered temporarily detained after his arraignment on October 3 and detained pending trial after an evidentiary hearing before Magistrate Judge Rueter on October 7. *See generally* (Arraignment Minute Entry, ECF No. 5); (Pretrial Detention Order, ECF No. 9).[1] Judge Reuter concluded the Government proved by clear and convincing evidence that "no condition or combination of conditions" of release

---

[1] The trial has been continued due to the COVID-19 pandemic. It is currently scheduled to begin on January 26, 2021, s*ee* (Order for Continuance, ECF No. 61), but will be rescheduled again, hopefully to a date in February or March.

1

would "reasonably assure the safety of other persons and the community." (Pretrial Detention Order 1.) He further found "[t]he strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, establishes the defendant's danger to the community and increases the high risk that defendant will not appear as required by the Court." (*Id.* at 2.)

Golden now moves to revoke Judge Reuter's Order of Detention and for release on bond pursuant to 18 U.S.C. §§ 3142 and 3145(b). In a *pro se* Motion, he argues his constitutional rights have been violated during his detention amid the COVID-19 pandemic.[2] *See* (Mot. for Release 9, ECF No. 62). His FDC Philadelphia unit was temporarily locked down to prevent the spread of COVID-19 after he and other inmates tested positive for the virus. *See* (*id.* at 2–3); (Gov't Resp. 4, ECF No. 66). He alleges during lockdown he was barred from communicating with his family and attorney, denied access to computers, recreation, commissary and showers and deprived of sanitized or washed bed linens and cleaning agents for several days. *See* (*id.* at 3–4, 6–7). He claims FDC Philadelphia has been slow to adopt preventive measures to protect inmates from COVID-19, certain officers do not wear masks around the facility and inmates are not being well-fed. *See* (*id.* at 8, 13–15). He believes his experience has caused him duress and violated his rights to due process, equal protection and freedom from cruel and unusual punishment. (*Id.* at 7–12.)

In a counseled Supplemental Motion, Golden also argues the 18 U.S.C. § 3142(g)

---

[2] The Third Circuit has held that "[w]here a defendant is awaiting trial, the appropriate vehicle for violations of his constitutional rights are pretrial motions or the expedited appeal procedure provided by the Bail Reform Act, 18 U.S.C. § 3145(b), (c), and not a habeas corpus petition." *Whitmer v. Levi*, 276 F. App'x 217, 219 (3d Cir. 2008).

2

factors favor his release. (Suppl. Mot. for Release 5, ECF No. 64.) He did not engage in violent behavior or illegal use of the firearm he possessed or commit his offense while on probation, parole or release pending trial. *See* (*id.* at 5–7). He claims there is no evidence his activity was inherently dangerous and his criminal history does not involve acts of violence. *See* (*id.* at 6–7). He says he presents "no demonstrable risk of flight" as he is a lifelong Philadelphia resident with family ties to the area and no financial means to flee. *See* (*id.*). Golden further contends the COVID-19 pandemic will cause him to be detained pretrial longer than normal because of the delay in jury trials. (*Id.* at 8.) While he awaits trial, his risk of further exposure to COVID-19 is heightened in detention given poor conditions and his inability to socially distance at FDC Philadelphia. *See* (*id.* at 8–12).

Golden proposes conditions of release to reasonably assure his appearance in court and the safety of the community. (*Id.* at 1–2.) He suggests he can live with his partner, who will act as his third party custodian, and child on twenty four hour home confinement; execute a $50,000 personal recognizance bond co-signed by his partner; surrender any passports; report to pretrial services and undergo any treatment as directed; and refrain from possessing any dangerous weapon, excessive use of alcohol, use of narcotics or unprescribed controlled substances, committing another crime and having contact with witnesses or victims of his crimes except through counsel or investigators. *See* (*id.* at 4–5).

The Government responds that COVID-19 does not warrant releasing Golden, who is twenty-nine years old, in good health and has already recovered from the virus "without any apparent consequence." (Gov't Resp. 5.) While many FDC Philadelphia

inmates tested positive for COVID-19 in late October and November, following the lockdown period nearly all inmates were found to have recovered and most who had been infected, including Golden, remained asymptomatic throughout. (*Id.* at 4.) Contrary to Golden's allegations, FDC Philadelphia provided health care, laundry, meals and other essential services throughout lockdown. (*Id.*) Lockdown has ended and normal services, including legal visits, have resumed. (*Id.* at 4–5.)

The Government also argues Golden's continued detention is warranted under 18 U.S.C. § 3142. *See* (Govt Resp. 2); (Gov't Suppl. Mem. 2, ECF No. 68). Golden's incentive to flee is the fifteen-year mandatory minimum he faces in a case where the evidence against him is strong. (Gov't Resp. 2.) He remains a danger to the community based on his offense and criminal history. (*Id.*)

## II

### A

"Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause." *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) (citation omitted). Pretrial detainees in federal custody are protected by the Due Process Clause of the Fifth Amendment. *See Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018). The Fifth Amendment Due Process Clause contains an "equal protection component." *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316–17 (3d Cir. 2001).

"The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 326 (3d Cir.

2020) (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)). "The ultimate question is whether conditions are reasonably related to a legitimate governmental objective." *Hope*, 972 F.3d at 326 (internal quotations and citation omitted). "[I]f a restriction is not related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell v. Wolfish*, 414 U.S. 520, 539 (1979).

> The Supreme Court instructs that:
>
> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Id.* at 540 n.23 (citations omitted); *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) (same). The Third Circuit instructs the "legitimate objectives and difficulties of managing a detention facility" and the objectives of detention must be considered in assessing whether conditions of confinement are meant to punish. *Hope*, 972 F.3d at 326. "[C]ourts must acknowledge that practical considerations of detention justify limitations on many privileges and rights." *Id.* (internal quotations and citation omitted).

If a regulation "neither burdens a fundamental right nor targets a suspect class, it does not violate the Fourteenth Amendment's Equal Protection Clause, as incorporated through the Fifth Amendment's Due Process Clause, so long as it bears a rational relationship to some legitimate end." *McKelvie*, 239 F.3d at 317. Prisoners are

5

not a suspect class. *See id*. And "the right of access to the courts is not absolute." *Id*. (citing *United States v. Kras*, 409 U.S. 434, 450 (1972)).

B

Section 3145(b) of Title 18 of the United States Code allows a defendant to move to revoke pretrial detention ordered by a magistrate judge in the court with original jurisdiction over his offense. A district court reviews the magistrate judge's decision *de novo*. *See United States v. Delker*, 757 F.2d 1390, 1394–95 (3d Cir. 1985).

A court may order a defendant's pretrial detention if it finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).[3] The Government bears the burden of proving a defendant's flight risk by a preponderance of the evidence and dangerousness by clear and convincing evidence. *See United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986).

Courts must consider several factors to determine whether a set of conditions may accommodate a defendant's release, including:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves a . . . firearm;

(2) the weight of evidence against the person;

(3) the history and characteristics of the person, including—

---

[3] For certain offenses or circumstances, 18 U.S.C. § 3142(e) establishes a rebuttable presumption that no conditions will reasonably assure a defendant's appearance and community safety. After a request from the Court for supplemental briefing as to the applicability of the presumption in this case, *see* (ECF No. 67), the Government acknowledged the presumption does not apply but argued the facts of Golden's case nonetheless support his continued detention. *See* (Gov't Suppl. Mem. 1).

>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, . . . criminal history, and record concerning appearance at court proceedings; and
>
>   (B) whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## C

Section 3142(i) also provides a "limited safety valve provision" allowing a court to re-examine a detention decision. *See United States v. Washington-Gregg*, No. 19-331, 2020 WL 1974880, at *5 (M.D. Pa. Apr. 24, 2020). Under this section, a Court may grant temporary release if it "determines such release to be necessary for preparation of the person's defense or for another compelling reason." The defendant bears the burden of making an "individualized and specific showing of a compelling reason[]" for release. *United States v. Brown*, No. 19-259, 2020 WL 2036715, at *4 (M.D. Pa. Apr. 28, 2020). "[C]ourts have used this provision sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hajiev*, 460 F. Supp. 3d 553, 555 (E.D. Pa. 2020) (internal quotations and citation omitted).

"[T]wo guiding tenets" facilitate the Court's review of § 3142(i) requests filed in response to the COVID-19 pandemic. *See United States v. Xue,* 459 F. Supp. 3d 659, 667 (E.D. Pa. 2020), *overruled on other grounds by United States v. Xue*, No. 20-2039, 2020 WL 6777547 (3d Cir. Aug. 7, 2020) (vacating order denying pretrial release).

"First, Section 3142(i) motions must be considered within the larger context of the requirements of the Bail Reform Act. Second, the generalized risk of COVID-19 is not, in and of itself, a sufficient reason to justify release." *Id.*; *see also United States v. Carter*, No. 18-561-1, 2020 WL 3412571, at *5 (E.D. Pa. June 22, 2020). "[R]esolving Section 3142(i) motions requires an individual assessment of the movant's characteristics and circumstances in light of these two considerations." *Xue*, 459 F. Supp. 3d at 667.

Courts may consider four factors, among others, in re-examining a detention decision in the COVID-19 environment:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Id.* at 668 (citing *United States v. Deshields*, No. 19-cr-99, 2020 WL 2025377, at *3 (M.D. Pa. Apr. 27, 2020); *see also United States v. McGlory*, No. 2:17-CR-20489, 2020 WL 1905719, at *2 (E.D. Mich. Apr. 17, 2020). "The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a 'compelling reason' exists such that temporary release is 'necessary.'" *United States v. Denmark*, No. 1:19-CR-15, 2020 WL 1984306, at *6 (M.D. Pa. Apr. 27, 2020).

### III

### A

Golden's detention amid the COVID-19 pandemic has not violated his due process rights. *See United States v. Sterling*, 459 F. Supp. 3d 673, 680 (E.D. Pa. 2020)

("[T]he existence of COVID-19 does not transform . . . pretrial detention into punishment prior to an adjudication of guilt."). The restrictions during FDC Philadelphia's lockdown in late October and early November were imposed to protect inmates and prevent further spread of COVID-19 at the facility. FDC Philadelphia now follows a protocol that limits inmate restrictions where possible—it removes housing units from quarantine once every inmate in the unit is deemed recovered or has tested negative twice fourteen days apart. (Gov't Resp. 4.) FDC Philadelphia's safety measures to mitigate the spread of COVID-19 align with the Bureau of Prisons' broader operational changes in response to COVID-19, such as reducing inmate intake, movement and congregation, limiting visits by non-BOP staff and distributing face masks and cleaning supplies to all staff and inmates. *See* (*id.* at 3). And BOP's operational changes share the same goal as governing bodies across our country during this pandemic: preventing as many COVID-19 cases as possible.

    The restrictions imposed on FDC Philadelphia inmates to prevent the spread of COVID-19 are clearly related to a legitimate governmental objective. There is no evidence the facility has exaggerated its response to the pandemic or imposed any COVID-19-based restriction arbitrarily or for the purpose of punishing pretrial detainees. *See also Wolfish*, 441 U.S. at 548 ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); *Block v. Rutherford*, 468 U.S. 576,585 (1984) (same); *Rinaldi v. United States*, 904 F.3d 257, 273–74 (3d Cir. 2018) (same).

For similar reasons, Golden's detention has not violated his right to equal protection under the law. Golden has not demonstrated FDC Philadelphia's COVID-19 restrictions burden a fundamental right or target a suspect class. And the restrictions bear a rational relationship to a legitimate end.

B

The § 3142(g) factors weigh in favor of Golden's detention, and the Government has met its burdens of proving Golden is a danger to the community and a flight risk. Golden was indicted for possessing a firearm with 100 live rounds when he knew his criminal history included a conviction punishable by more than one year in prison. The evidence against him is strong. Police saw him waving a revolver in an Instagram post and found the same revolver and rounds of ammunition in his home. (Pretrial Detention Order 1.)[4] His DNA was on the firearm. (Gov't Resp. 2.) If Golden is convicted, he faces a fifteen-year mandatory minimum sentence. *See* 18 U.S.C. § 924(e). This provides substantial incentive for him to flee.

Golden's proposed release conditions do not prevent his risk of flight. His partner's willingness to serve as third-party custodian does not mean she is able to adequately supervise him. *See United States v. Bey*, No. 15-87, 2015 WL 7176340, at *5 (W.D. Pa. Nov. 13, 2015) ("[T]he mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered. . . ."). And electronic monitoring does not prevent his movement. *See, e.g. United States v. Nikparvar-Fard*,

---

[4] Golden argues "the weight of evidence against the person" refers to "the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." (Suppl. Mot. for Release 6) (quoting *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)). The Third Circuit has not interpreted § 3142(g)(2) this way.

10

No. 18-101-1, 2019 U.S. Dist. LEXIS 117710, at *20 (E.D. Pa. July 11, 2019) ("[C]ourts throughout the Third Circuit have recognized, although electronic monitoring can shorten the time between flight and detection, it provides no assurance against flight at a propitious time or of apprehension once flight is undertaken.") (internal quotations and citation omitted); *United States v. Abdullahu*, 488 F. Supp. 2d 433, 444 (D.N.J. 2007) ("Electronic monitoring and home confinement do not guarantee that defendant will not flee or endanger the community. Electronic monitoring impedes but does not prevent a defendant from fleeing.").

Golden has no significant mental or physical conditions that influence the propriety of pretrial detention. While he has strong personal and family ties to Philadelphia, those ties have not deterred his criminal activity in the past. Golden has accumulated his entire criminal history, which includes numerous instances of possession of controlled substances and intent to inject them into the community, in Philadelphia County. *See* (Pretrial Detention Order 2). He was convicted of possession with intent to deliver a controlled substance while on pretrial release for another drug trafficking charge. (Gov't Suppl. Mem. 2.) He committed his current offense while residing with family in Philadelphia. (Gov't Resp. 2.) And even though he has lived in Philadelphia all his life, he has no verifiable employment here or anywhere else. (Pretrial Detention Order 2.) Golden's series of offenses, and his recent acquisition of a firearm that he advertised on social media despite these offenses, make him a danger to the community.

C

COVID-19 also does not present a compelling reason for Golden's temporary release. Golden is twenty-nine years old and does not allege any preexisting conditions that may make him more susceptible to severe illness from COVID-19 and warrant his release. *See United States v. Denmark*, 2020 WL 1984306, at *5 ("Cases construing § 3142(i) generally have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society.") (internal quotations and citation omitted). His home confinement plan is not tailored to mitigate any COVID-19 risks he may face upon release. *See Xue*, 459 F. Supp. 3d at 671 ("Although home detention may to an extent limit his risk as a form of social distancing, Defendant still faces risk of exposure. He will necessarily have contact with the outside world, whether it be for food, medical assistance, or contact with counsel.") And his previous experience with COVID-19 does not weigh in favor of his release. This Court has only authorized pretrial release for a defendant at risk of COVID-19 reinfection where the defendant was at the "highest risk" of severe illness from COVID-19 due to his medical conditions. *See United States v. Salley*, No. 19-688, 2020 WL 7024253, at *7–9 (E.D. Pa. Nov. 30, 2020).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

12